**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAILEY RAY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>EVPASSPORT LLC, *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 25-2619 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

　　This matter comes before the Court upon Defendants EVPassport LLC ("EVP"), Charlotte How ("How"), and Daniel Grosbach's ("Grosbach") (collectively, "Defendants") Motion to Dismiss (ECF No. 10) Plaintiff Hailey Ray's ("Plaintiff") Complaint (ECF No. 1) under Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff opposed (ECF No. 11), and Defendants replied (ECF No. 12). After careful consideration of the parties' submissions, the Court decides Defendants' motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' Motion to Dismiss is granted.

---

[1] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

I.  **BACKGROUND**

   A.  **Factual Background**[2]

Plaintiff is a New Jersey resident who, on or about February 26, 2024, began employment with EVP as the Director of Enterprise Partnership. (Compl. ¶¶ 1, 13, ECF No. 1 at *10-*28.)[3] How served as EVP's Vice President of People Operations. (*Id.* ¶ 3.) Grosbach was employed by EVP and served as Plaintiff's supervisor. (*Id.* ¶ 4.) EVP was "in the business of providing full-service charging solutions for electric vehicles to its customers and clients throughout the country, including in the State of New Jersey." (*Id.* ¶ 2.)

When Plaintiff began working for EVP, "she was a mother with plans to expand her family." (*Id.* ¶ 17.) She reached out to Grosbach to ask about EVP's maternity leave policy on or about November 7, 2024. (*Id.* ¶ 18.) Grosbach informed Plaintiff that he was unaware if EVP had a maternity leave policy, but would investigate and respond in short order. (*Id.*) Briefly after this conversation, Plaintiff received a text message from Hooman Shahidi ("Shahidi"), EVP's Chief Executive Officer, stating, "I heard you asked about maternity leave." (*Id.* ¶ 19.) Plaintiff believed that her question was addressed to company management by Grosbach, but weeks passed without a response. (*Id.* ¶ 20.) Plaintiff repeatedly followed up with Grosbach, asking for an update, but was ignored. (*Id.* ¶ 21.)

Meanwhile, Plaintiff learned that other women working for EVP had similar unanswered questions about EVP's maternity leave policy, including but not limited to Madison Cashner ("Cashner") and Anundia Vadafari ("Vadafari"). (*Id.* ¶ 22.) One month after asking Grosbach

---

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] Page numbers within a record cite that are preceded by an asterisk refer to the page numbers atop the ECF header.

2

about the maternity leave policy, on December 9, 2024, Plaintiff created a group chat between How and the following EVP employees: (1) Plaintiff; (2) Cashner; (3) Vadafari; and (4) Courtney Irwin ("Irwin") to advocate for a maternity and/or paternity leave policy.[4] (*Id.* ¶¶ 23, 26, 35.) How informed the women that EVP did not offer any form of maternity leave or benefits but did offer unpaid leave to eligible employees pursuant to the Family Medical Leave Act ("FMLA"). (*Id.* ¶ 24.) How also stated that EVP's handbook was "very old school" and "desperately need[ed] an update." (*Id.* ¶ 25.) In response, Cashner advocated for the adoption of a "legitimate maternity leave policy." (*Id.* ¶ 26.) How, however, did not follow up with the EVP employees' inquiries "regarding whether the company intended to adopt a true maternity leave policy." (*Id.* ¶ 27.)

On January 3, 2025, Plaintiff was called into a meeting and terminated due to alleged performance deficiencies. (*Id.* ¶ 28.) Plaintiff had never been informed of any issues before the meeting and stated that she was one of the highest earners on her team. (*Id.*) Plaintiff asked about the metrics used to make that evaluation, but Grosbach could not point to any "legitimate" metric. (*Id.* ¶¶ 29-30.)

Following termination, Plaintiff was suspicious of Defendants' motives, and on January 7, 2025, submitted a formal complaint of discrimination and retaliation to How via email message reading, in part:

> I am writing to formally express my concerns regarding my recent termination from EVP[] and the severance package that has been offered. I believe my termination was wrongful, as I was never made aware of any performance issues, either in writing or verbally during meetings. To the best of my knowledge, my performance consistently met expectations, and I have not received any formal feedback or documentation indicating otherwise prior to my departure.

---

[4] In paragraph twenty-three of the Complaint, Plaintiff does not initially introduce Irwin as a member of this group chat. (Compl. ¶ 23.) Irwin is introduced for the first time in paragraph thirty-five of the Complaint. (*Id.* ¶ 35.)

3

> . . .
> Instead, I believe my termination may have been related to my expressing concerns in writing and verbally to multiple leaders at EVP[] about maternity leave and my desire to grow my family. I feel that my requests and inquiries in this regard were not appropriately addressed, which has led to the current situation.

(*Id.* ¶ 31.) While How stated in response to Plaintiff's email message that the performance concerns were brought up in one-on-one meetings, quarterly business reviews, and weekly forecast meetings, Plaintiff disputes these assertions and states the performance concerns were never discussed. (*Id.* ¶¶ 32-33.)

Plaintiff was not the only employee whom EVP terminated for alleged performance issues at the time. (*Id.* ¶ 34.) Plaintiff alleges that two other female employees—Vadafari and Irwin—were terminated around the same time and had also participated in the group chat with How regarding maternity leave. (*Id.* ¶ 35.) Vadafari separately submitted a formal complaint about adopting a parental/maternal leave policy. (*Id.* ¶ 36.)

### B. Procedural Background

On March 13, 2025, Plaintiff filed a Complaint with the Superior Court of New Jersey, alleging two New Jersey Law Against Discrimination ("NJLAD") claims: (1) disparate treatment due to gender; and (2) retaliation/improper reprisal. (*See generally id.*) Defendants removed the instant action, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal, ECF No. 1 at *1-*5.) Defendants now move to dismiss under Rule 12(b)(6). (*See generally* Defs.' Moving Br., ECF No. 10-2.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 11), and Defendants replied (Defs.' Reply Br., ECF No. 12). The Motion is now ripe for review.

## II. <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. <u>DISCUSSION</u>

In moving to dismiss, Defendants argue that Plaintiff's Complaint should be dismissed because Plaintiff fails to state a claim for: (1) disparate treatment due to gender (Defs.' Moving Br. 8); and (2) retaliation/improper reprisal (*id.* at 9).

### A. Disparate Treatment Claim—Count One

In Count One, Plaintiff asserts an NJLAD gender-based disparate treatment claim against Defendants. (Compl. ¶¶ 40-56.) More specifically, Plaintiff alleges that she was terminated for inquiring about a maternity leave policy, and that other female employees who raised similar concerns were also terminated. (*Id.* ¶ 37.)

The NJLAD provides that it is unlawful for an employer to discriminate against an individual "in compensation or in terms, conditions[,] or privileges of employment" because of the individual's "sex, gender identity or expression, [or] disability." N.J. Stat. Ann. § 10:5-12(a).[5] Discrimination claims brought under NJLAD are "controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas*." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (citing, among others, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). Under the *McDonnell Douglas* framework, a plaintiff first must make a prima facie case of discrimination; the burden then shifts to the defendant, who must articulate a "legitimate, . . . nondiscriminatory reason for its actions"; and finally, the burden shifts back to the plaintiff to prove that the employer's "nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Id.* at 842.

To assert a prima facie case of discrimination, a plaintiff must allege that: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Id.* (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). For a disparate treatment discrimination claim, a plaintiff must also adequately

---

[5] The NJLAD uses the term "sex" rather than "gender" in the employment discrimination context, though it does refer to "gender identity or expression." *See* N.J. Stat. Ann. § 10:5-12(a).

plead that she was subject to purposeful discrimination. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990). Purposeful discrimination "can[,] in some situations[,] be inferred from the mere facts of differences in treatment." *Gerety v. Atl. City Hilton Casino Resort*, 877 A.2d 1233, 1237 (N.J. 2005).

At the outset, the Court notes that Defendants, for purposes of the instant motion, do not dispute the first three elements. (Defs.' Moving Br. 8-9.) Rather, Defendants dispute that the Complaint sufficiently alleges the fourth element—that Plaintiff alleges she suffered an adverse employment action under circumstances that could give rise to an inference of intentional discrimination. (*See id.*)

Here, the Court finds that Plaintiff fails to adequately plead an inference of discrimination under the fourth element. Specifically, the Complaint offers no facts or details: (1) identifying individuals employed by EVP who may have acted in discriminatory ways; (2) showing that any male employees sought paternity leave or that Defendants granted leave to some employees but not others; (3) showing that EVP replaced Plaintiff or sought to replace her with someone to perform the same work after she was terminated; (4) pointing to incidences of discrimination in the workplace; or (5) regarding any behavior that Defendants engaged in which suggests it unlawfully discriminated against Plaintiff on account of her gender. Moreover, Plaintiff's Complaint also fails to cite any similarly situated employee whose comparatively better treatment or experience might raise a plausible inference of discrimination against Plaintiff.[6] *Feng v. Univ.*

---

[6] It is not entirely clear whether the communications concerned a maternity leave policy, which would benefit only women, or a parental leave policy, which would benefit both sexes. (*See* Compl. ¶¶ 18, 22, 24 (alleging communications were about "maternity" leave); *id.* ¶ 26 (quoting Plaintiff's coworker's advocacy of "a paid parental leave policy"); *id.* ¶ 36 (quoting another coworker as submitting a "formal written complaint" that stated, "I'd like to request the company to evaluate our parental leave policy. It would benefit the company and our women to include paid time off for maternity leave").)

*of Del.*, 785 F. App'x 53, 56 (3d Cir. 2019) ("While [p]laintiff's discrimination claim suffers from several infirmities, one primary flaw is that [s]he has not established a prima facie case since [s]he . . . has failed to show he was treated differently than similarly situated [colleagues] who were not members of h[er] protected class.").

Without such allegations, the Court is unable to make the requisite inference that Plaintiff was subject to purposeful discrimination because of her gender. *See, e.g., Perry v. United States Parcel Serv.*, No. 21-11028, 2024 WL 5054528, at *3 (D.N.J. Dec. 9, 2024) (dismissing plaintiff's NJLAD claim because he failed to sufficiently allege that similarly situated employees outside of plaintiff's protected class were not suspended for breaching company rules); *Schwinge v. Deptford Twp. Bd. of Educ.*, No. 09-5964, 2011 WL 689615, at *4 (D.N.J. Feb. 17, 2011) (dismissing plaintiff's NJLAD gender-based discrimination claim because she failed to sufficiently allege facts from which the court could infer a non-pregnant employee replaced her); *Tourtellotte*, 636 F. App'x at 843 (dismissing plaintiff's NJLAD gender-based discrimination claim because plaintiff failed to show that the adverse employment action was because of plaintiff's sex). While the Court acknowledges that "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)), the Court cannot ignore that "a plaintiff's 'subjective belief that [gender] played a role in an employment decision is not sufficient to establish an inference of discrimination[.]" *Bradley v. Just Greens, LLC*, No. 19-7162, 2019 WL 4316773, at *4 (D.N.J. Sep. 12, 2019) (quoting *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013)). Such beliefs must be supported through "relevant evidence." *Perry*, 2024 WL 5054528, at *3. The Court, accordingly, dismisses Count One.

B.     Retaliation/Improper Reprisal Claim—Count Two

In Count Two, Plaintiff asserts a retaliation/improper reprisal claim against Defendants. (Compl. ¶¶ 57-66.) More specifically, Plaintiff alleges that she was retaliated against after "she raised complaints and/or protests regarding [EVP's] maternity leave policy and inquired about [EVP's] maternity leave policy, or lack thereof." (*Id.* ¶ 59.)

The NJLAD prohibits an employer from taking any retaliatory action against an employee who engages in a protected activity.[7] N.J. Stat. Ann. § 10:5-12(d). Plaintiff's retaliation claim is also evaluated under the *McDonnell Douglas* burden-shifting framework. *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013). To raise a retaliation claim under the NJLAD, the plaintiff must adequately allege that: "(1) she engaged in a protected activity known to the defendant; (2) she was thereafter subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the two." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)).

Here, Defendants only dispute the first element—that the Complaint sufficiently alleges that Plaintiff engaged in a protected activity known to Defendants. (*See* Defs.' Moving Br. 9; Pl.'s Opp'n Br. 13.) The Court, therefore, will only address whether Plaintiff adequately pled the first element.

Defendants, on the one hand, argue that Plaintiff did not engage in protected activity when she inquired about EVP's parental leave policy because her maternity leave communication did not "concern discrimination," identify an "illegal employment practice," or allege "a particular

---

[7] "The same showing of proof required for an A[mericans with] D[isabilites] A[ct] claim is required for the NJLAD claim[,] and, therefore, the same standard is used." *Cottrell v. Norman*, No. 12-1986, 2014 WL 3729215, at *6 n.4 (D.N.J. July 25, 2014). The Court, therefore, relies, in part, on decisions with underlying ADA claims.

9

type of discrimination." (Defs.' Moving Br. 10-11.) Plaintiff, on the other hand, argues that her inquiry about maternity leave was a protected activity under the NJLAD. (Pl.'s Opp'n Br. 13.)

"[A] person engages in [a] protected activity under the [NJ]LAD when that person opposes any practice rendered unlawful under the [NJ]LAD."[8] *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005); *Bradley v. Atl. City Bd. of Educ.*, 736 F. Supp. 2d 891, 900 (D.N.J. 2010) ("[P]rotected activity includes 'opposing practices or acts forbidden under [the statute]' as well as filing a complaint." (citations omitted)). To be considered a protected activity, an employee's complaint "must concern discrimination" and, moreover, must be more than a general complaint of unfair treatment.[9] *Dunkley v. S. Coraluzzo Petroleum Transporters*, 98 A.3d 1202, 1208 (N.J. Super. Ct. App. Div. 2014).

Here, the Court finds that the Complaint fails to sufficiently allege that Plaintiff engaged in protected activity. Plaintiff contends that she engaged in protected activity when she inquired

---

[8] NJLAD's anti-retaliation provision provides that:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> . . .
>
> d. For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has sought legal advice regarding rights under this act, shared relevant information with legal counsel, shared information with a governmental entity, or filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J. Stat. Ann. § 10:5-12.

[9] That said, not every complaint entitles its author to protection from retaliation under the NJLAD. *Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 106-07 (3d Cir. 2013). "Rather, only challenges to discrimination prohibited by the NJLAD[,] such as discrimination on the basis of race, age, or gender . . . constitute 'protected activity.'" *Id.* at 107.

about EVP's maternity leave policy. (Pl.'s Opp'n Br. 13-14.) In the Complaint, Plaintiff alleges that she first inquired about EVP's maternity leave policy to Grosbach. (Compl. ¶ 18.) But for Plaintiff's inquiry "'to be considered a protected activity,'" her communication to EVP "'must concern discrimination.'" *Spencer v. Parsippany-Troy Hills Twp. Sch. Dist.*, No. 23-21680, 2024 WL 3409443, at *4 (D.N.J. July 14, 2024) (quoting *Cohen*, 419 F. Supp. 3d at 861). This inquiry, however, did not concern discrimination.[10] Notwithstanding this, Plaintiff further alleges that, approximately a month later, she created a group chat between herself, Cashner, Vadafari, Irwin, and How to advocate for a maternity and/or paternity[11] leave policy. (Compl. ¶¶ 23, 26, 35.) How informed the women that EVP did not offer any form of maternity leave or benefits, but did offer unpaid leave to eligible employees under the FMLA.[12] (*Id.* ¶ 24.) The mere fact that EVP lacked a parental leave policy, however, does not automatically transform into gender-based discrimination or what Plaintiff characterizes as "mom bias." *See Gerety*, 877 A.2d at 1242 ("If an employer treats its pregnant employees no differently than comparable non-pregnant employees in need of extended medical leave, then the [NJ]LAD is not transgressed"; court's will not impose an "enhanced leave" requirement "under the mantle of the [NJ]LAD."). These allegations, viewed

---

[10] Plaintiff alleges that she inquired about the leave policy because she had plans to expand her family. (Compl. ¶ 17.) But, "[e]xperiencing . . . [something] that is *likely* to require accommodation is not itself protected activity for a retaliation claim." *Moskowitz v. Neshaminy Sch. Dist.*, No. 20-5016, 2022 WL 4225398, at *10 (E.D. Pa. Sep. 13, 2022) (citing *Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 50 (3d Cir. 2017)). "This is because the purpose of the anti-retaliation provision is to protect those who exercise their rights to address . . . discrimination." *Id.* (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569 (3d Cir. 2002)). An explicit "request for . . . leave[, however,] is protected activity under the [NJLAD]" for retaliation purposes. *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 703 (E.D. Pa. 2010).

[11] Cashner stated, "a paid parental leave policy needs [to be] put in place as every company offers this now." (Compl. ¶ 26.)

[12] How also seemingly acknowledged that EVP's policy was "very old school" and "desperately need[ed] an update." (Compl. ¶ 25.)

independently or collectively, fail to sufficiently allege that Plaintiff engaged in a protected activity under the NJLAD. The Court, accordingly, dismisses Count Two. Plaintiff's Complaint is, therefore, dismissed without prejudice.[13]

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted. Plaintiff's Complaint is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: 10/7/2025

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[13] Because the Court dismisses Plaintiff's Complaint in its entirety, the Court need not address the individual liability of How and Grosbach. *See Spagnoli v. Brown & Brown Metro, Inc.*, No. 06-414, 2007 WL 2362602, at *7 n.3 (D.N.J. Aug. 15, 2007) ("Because the [c]ourt has concluded that [p]laintiff has failed to establish a cause of action under . . . NJLAD for pregnancy/gender discrimination, there is no basis for individual liability . . . under NJLAD and the [c]ourt will dismiss these claims against them.").