NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HAILEY RAY,

               Plaintiff,

          v.

EVPASSPORT LLC, *et al.*,

               Defendants.

Civil Action No. 25-2619 (MAS) (RLS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants EVPassport LLC ("EVP"), Charlotte How ("How"), and Daniel Grosbach's ("Grosbach," collectively with EVP and How "Defendants") Motion to Dismiss (ECF No. 17) Plaintiff Hailey Ray's ("Plaintiff") First Amended Complaint ("FAC") (ECF No. 15). Plaintiff opposed (ECF No. 20), and Defendant replied (ECF No. 21). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Defendants' Motion to Dismiss.

I.    **BACKGROUND**[1]

    A.    **Factual Background**

The Court detailed the factual and procedural background of this matter in its October 7, 2025, Memorandum Opinion (the "October Opinion"). (Oct. Mem. Op. 2-4, ECF No. 13.) It

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the FAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

therefore only discusses the facts necessary to contextualize the motion before it and directs the parties to the October Opinion for a detailed recitation of the facts.

Plaintiff is a New Jersey resident who, on or about February 26, 2024, began employment with EVP as the Director of Enterprise Partnership. (FAC ¶¶ 1, 13, ECF No. 15.) How served as EVP's Vice President of People Operations. (*Id.* ¶ 3.) Grosbach was employed by EVP and served as Plaintiff's supervisor. (*Id.* ¶ 4.)

Plaintiff began to ask questions about EVP's maternity leave policy in November 2024 but received no answers. (*Id.* ¶¶ 17-21.) In December 2024, after learning that other women working for EVP had similar questions, Plaintiff created a group chat to advocate for a maternity and/or paternity leave policy with herself, How, and the following EVP employees: (1) Madison Cashner ("Cashner"); (2) Anundia Vadafari ("Vadafari"); and (3) Courtney Irwin ("Irwin"). (*Id.* ¶¶ 23-24.) How informed the women that EVP did not offer any form of maternity leave or benefits but did offer unpaid leave to eligible employees pursuant to the Family Medical Leave Act ("FMLA"). (*Id.* ¶ 25.) How also stated that EVP's handbook was "very old school" and "desperately need[ed] an update." (*Id.* ¶ 26.) In response, Cashner advocated for the adoption of a "legitimate maternity leave policy" explaining that she "agree[d that] a paid parental leave policy need[ed] to be put in place[.]" (*Id.* ¶ 27 (citation modified).) How, however, did not follow up with Plaintiff "regarding whether the company intended to adopt a true maternity leave policy." (*Id.* ¶ 29.)

On January 3, 2025, Plaintiff was called into a meeting and terminated due to alleged performance deficiencies. (*Id.* ¶ 30.) Plaintiff had never been informed of any issues before the meeting and stated that she was one of the highest earners on her team. (*Id.*) Plaintiff asked about the metrics used to make that evaluation, but Grosbach could not point to any "legitimate" metric. (*Id.* ¶¶ 30-32.)

2

Following her termination, Plaintiff submitted a formal complaint of discrimination and retaliation to How via e-mail message. (*Id.* ¶ 33.) While How responded that the performance concerns were brought up in one-on-one meetings, quarterly business reviews, and weekly forecast meetings, Plaintiff disputes these assertions and alleges the performance concerns were never discussed. (*Id.* ¶¶ 34-35.) Plaintiff further alleges that two other female employees who participated in the group chat with How regarding maternity leave—Vadafari and Irwin—were terminated around the same time. (*Id.* ¶ 37.) Vadafari separately submitted a formal complaint about adopting a parental/maternal leave policy. (*Id.* ¶ 38.)

**B.    Procedural Background**

Plaintiff filed her initial Complaint with the Superior Court of New Jersey, alleging two New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12, *et seq.*, claims: (1) disparate treatment due to gender ("Count One"); and (2) retaliation/improper reprisal ("Count Two"). (*See generally* Compl., ECF No. 1 at *10-28.[2]) Defendants removed the Matter to this Court, invoking its diversity jurisdiction under 28 U.S.C. § 1332. (Defs.' Not. of Removal *1-5, ECF No. 1.) On May 6, 2025, Defendants filed a motion to dismiss Plaintiff's Complaint, which this Court granted. (*See* Oct. Mem. Op.; Oct. Order, ECF No. 14.) Plaintiff thereafter filed the operative FAC asserting the same causes of action. (FAC ¶¶ 46-72.) Defendants filed the instant Motion to Dismiss (Defs.' Mot. to Dismiss, ECF No. 17), Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 20), and Defendants replied (Defs.' Reply Br., ECF No. 21).

---

[2] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

4

## III.    DISCUSSION

Defendants make four arguments in support of dismissing the FAC: (1) it fails to state a claim for gender discrimination; (2) it fails to state a claim for retaliation; (3) the remaining new allegations are "utterly irrelevant"; and (4) there is no basis for individual liability. (Defs.' Moving Br. 2-21, ECF No. 17-1.) The Court addresses each of Plaintiff's claims in turn.

### A.    Disparate Treatment Claim – Count One

In Count One, Plaintiff asserts an NJLAD gender-based disparate treatment claim against Defendants. (FAC ¶¶ 46-62.) More specifically, Plaintiff alleges that she was terminated for inquiring about a maternity leave policy, and that other female employees who raised similar concerns were also terminated. (*Id.* ¶ 40.)

As the Court explained in the October Opinion, the NJLAD provides that it is unlawful for an employer to discriminate against an individual "in compensation or in terms[,] conditions[,] or privileges of employment" because of the individual's "sex, gender identity or expression, [or] disability." N.J. Stat. Ann. § 10:5-12(a). Discrimination claims brought under the NJLAD are "controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas.*" *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (citing, among others, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). Under the *McDonnell Douglas* framework, a plaintiff first must make a prima facie case of discrimination; the burden then shifts to the defendant, who must articulate a "legitimate, . . . nondiscriminatory reason for its actions"; and finally, the burden shifts back to the plaintiff to prove that the employer's "nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Id.* at 842.

To assert a prima facie case of discrimination, a plaintiff must allege that: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an

adverse employment action; and (4) [the] adverse employment action gives rise to an inference of unlawful discrimination." *Id.* (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). For a disparate treatment discrimination claim, a plaintiff must also adequately plead that she was subject to purposeful discrimination. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990). Purposeful discrimination "can[,] in some situations[,] be inferred from the mere facts of differences in treatment." *Gerety v. Atl. City Hilton Casino Resort*, 877 A.2d 1233, 1237 (N.J. 2005).

Here, the FAC has not cured the deficiencies the Court noted in the October Opinion. (*See* Oct. Mem. Op.) Specifically, the FAC still fails to adequately plead an inference of discrimination under the fourth element. While the FAC offers additional factual allegations, including that "upon information and belief, other male employees . . . were promoted shortly after Plaintiff's termination[,]" the FAC still offers no facts or details: (1) identifying individuals employed by EVP who may have acted in discriminatory ways; (2) showing that any male employees sought paternity leave or that Defendants granted leave to some employees but not others; (3) showing that EVP replaced Plaintiff or sought to replace her with someone to perform the same work after she was terminated; (4) pointing to incidences of discrimination in the workplace; or (5) regarding any behavior that Defendants engaged in which suggests it unlawfully discriminated against Plaintiff on account of her gender. (*See generally* FAC.) Moreover, as the Court noted in the October Opinion, the FAC still fails to cite any similarly situated employee whose comparatively

6

better treatment or experience might raise a plausible inference of discrimination against Plaintiff.[4] (*See generally* FAC); *Feng v. Univ. of Del.*, 785 F. App'x 53, 56 (3d Cir. 2019) ("While [p]laintiff's discrimination claim suffers from several infirmities, one primary flaw is that [s]he has not established a prima facie case since [s]he . . . has failed to show [s]he was treated differently than similarly situated [colleagues] who were not members of h[er] protected class.").

For the reasons discussed in its previous opinion (*see generally* Oct. Mem. Op.), and because Plaintiff has still not alleged that anyone replaced her after she was terminated (*see generally* FAC), Plaintiff has not adequately alleged that she was subjected to purposeful discrimination because of her gender. *See, e.g., Perry v. U.S. Parcel Serv.*, No. 21-11028, 2024 WL 5054528, at *3 (D.N.J. Dec. 9, 2024) (dismissing plaintiff's NJLAD claim because he failed to sufficiently allege that similarly situated employees outside of plaintiff's protected class were not suspended for breaching company rules); *Schwinge v. Deptford Twp. Bd. of Educ.*, No. 09-5964, 2011 WL 689615, at *4 (D.N.J. Feb. 17, 2011) (dismissing plaintiff's NJLAD gender-based discrimination claim because she failed to sufficiently allege facts from which the court could infer a non-pregnant employee replaced her); *Tourtellotte*, 636 F. App'x at 843 (dismissing plaintiff's NJLAD gender-based discrimination claim because plaintiff failed to show that the adverse employment action was because of plaintiff's sex); *Larsen v. Township of Branchburg*, No. A-190-5T2, 2007 WL 135706, at *7 (N.J. Super. Ct. App. Div. Jan. 22, 2007) (noting that where a

---

[4] As noted in the October Opinion, it is still not entirely clear whether the inquiries concerned a maternity leave policy, which would benefit only women, or a parental leave policy, which would benefit both sexes. (*See* FAC ¶¶ 18, 23-25 (alleging communications were about "maternity" leave); *id.* ¶ 27 (quoting Plaintiff's coworker's advocacy of "a paid parental leave policy"); *id.* ¶ 28 (alleging that EVP "lacks a paid parental leave policy"); *id.* ¶ 38 (quoting another coworker as submitting a "formal written complaint" that stated, "I'd like to request the company to evaluate our parental leave policy. It would benefit the company and our women to include paid time off for maternity leave").)

policy affects both female and male employees equally, it does not discriminate against females). The Court, accordingly, dismisses Count One.

### B.    Retaliation/Improper Reprisal Claim – Count Two

In Count Two, Plaintiff asserts a retaliation/improper reprisal claim against Defendants. (FAC ¶¶ 63-72.) More specifically, Plaintiff alleges that she was retaliated against after "she raised complaints and/or protests regarding [EVP's] maternity leave policy and inquired about [EVP's] maternity leave policy, or lack thereof." (*Id.* ¶ 65.)

As the Court explained in the October Opinion (*see* Oct. Mem. Op.), the NJLAD prohibits an employer from taking any retaliatory action against an employee who engages in a protected activity. N.J. Stat. Ann. § 10:5-12(d). Plaintiff's retaliation claim is also evaluated under the *McDonnell Douglas* burden-shifting framework. *Battaglia v. United Parcel Serv., Inc.*, 70 A.3d 602, 619 (N.J. 2013). To state a retaliation claim under the NJLAD, the plaintiff must adequately allege that: "(1) she engaged in a protected activity known to the defendant; (2) she was thereafter subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the two." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)).

"[A] person engages in [a] protected activity under the [NJ]LAD when that person opposes any practice rendered unlawful under the [NJ]LAD." *Young v. Hobart W. Grp.*, 897 A.2d 1063, 1073 (N.J. Super. Ct. App. Div. 2005); *Bradley v. Atl. City Bd. of Educ.*, 736 F. Supp. 2d 891, 900 (D.N.J. 2010) ("[P]rotected activity includes 'opposing practices or acts forbidden under [the statute]' as well as filing a complaint." (citations omitted)). To be considered a protected activity, an employee's complaint "must concern discrimination" and, moreover, must be more than a

8

general complaint of unfair treatment. *Dunkley v. S. Coraluzzo Petroleum Transporters*, 98 A.3d 1202, 1208 (N.J. Super. Ct. App. Div. 2014).

For the same reasons discussed in the October Opinion, the FAC still fails to adequately allege that Plaintiff engaged in protected activity. (*See* Oct. Mem. Op.) The FAC still alleges that Plaintiff inquired about EVP's maternity leave policy[5], and that approximately a month later, she created a group chat between herself, How, and other employees to advocate for a maternity/parental leave policy. (FAC ¶¶ 18, 22-24.) For the reasons discussed in the October Opinion, however, these allegations fail to sufficiently allege that Plaintiff engaged in a protected activity under the NJLAD. (*See* Oct. Mem. Op.) The mere fact that EVP lacked a parental leave policy, does not automatically transform into gender-based discrimination. *See Gerety*, 877 A.2d at 1242 ("If an employer treats its pregnant employees no differently than comparable non-pregnant employees in need of extended medical leave, then the [NJ]LAD is not transgressed"; courts will not impose an "enhanced leave" requirement "under the mantle of the [NJ]LAD.") Because there was, importantly, no parental leave policy, the policy necessarily also affected men in a similar way. *See Larsen*, 2007 WL 135706, at *7 (explaining that when an employer's medical leave policy "is equally applied to male and female employees" the policy "is not discriminatory based on gender" (citation omitted)); *Spencer v. Parsippany-Troy Hills Twp. Sch. Dist.*, No.

---

[5] As noted in the October Opinion, Plaintiff alleges that she inquired about the leave policy because she had plans to expand her family. (FAC ¶ 17.) "Experiencing . . . [something] that is likely to . . . [happen, however,] is not itself protected activity for a retaliation claim." *Moskowitz v. Neshaminy Sch. Dist.*, No. 20-5016, 2022 WL 4225398, at *10 (E.D. Pa. Sep. 13, 2022) (citing *Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 50 (3d Cir. 2017)). "This is because the purpose of the anti-retaliation provision is to protect those who exercise their rights to address . . . discrimination." *Id.* (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 569 (3d Cir. 2002)). An explicit "request for . . . leave is protected activity under the [NJLAD]" for retaliation purposes—but here Plaintiff did *not* actually request leave. *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 703 (E.D. Pa. 2010).

23-21680, 2024 WL 3409443, at *4 (D.N.J. July 14, 2024) (noting that for an inquiry "to be considered protected activity" it "must concern discrimination" (internal quotations and citation omitted)).

The Court, accordingly, dismisses Count Two.[6]

## IV.    CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss is granted. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: JULY 16th, 2026

---

[6] Because the Court dismisses Plaintiff's FAC in its entirety, the Court need not address the individual liability of How and Grosbach. *See Spagnoli v. Brown & Brown Metro, Inc.*, No. 06-414, 2007 WL 2362602, at *7 n.3 (D.N.J. Aug. 15, 2007) ("Because the [c]ourt has concluded that [p]laintiff has failed to establish a cause of action under . . . NJLAD for pregnancy/gender discrimination, there is no basis for individual liability . . . under NJLAD and the [c]ourt will dismiss these claims against them.").